UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHRISTOPHER DAVIS,

Plaintiff,

-v-

CITY OF ROCHESTER; COLIN BLIND, Police Officer; ANTHONY PEDICONE, Police Officer; DESMOND GOOLSBY, Police Officer; LUKE HOLLENBECK, Police Officer; JASON HESS, Police Officer; SERGEANT CARUSO, Police Officer; SERGEANT EDWARD FRATANGELO Police Officer; DAVID SMITH, Chief of Police; ROCHESTER GENERAL HOSPITAL; AND KELLY HUIATT, Doctor, Rochester General Hospital

Defendants.

22-CV-6342 FPG
ORDER

---

## INTRODUCTION

*Pro se* Plaintiff, Christopher Davis, is an inmate housed at Elmira Correctional Facility. He brings suit against the City of Rochester; Rochester Police Department (RPD) Officers Colin Blind ("Blind"), Anthony Pedicone ("Pedicone"), Jason Hess ("Hess"), Luke Hollenbeck ("Hollenbeck") Desmond Goolsby ("Goolsby"), and Sergeants Caruso ("Caruso") and Fratangelo ("Fratangelo") (collectively "RPD Officers"); Dr. Kelly Huiatt ("Huiatt"); Rochester General Hospital ("RGH"); and RPD Chief David Smith ("Smith"). Plaintiff sues each defendant in his or her individual and official capacities.

Plaintiff asserts claims pursuant to 42 U.S.C § 1983 seeking monetary damages. Plaintiff alleges that, in violation of the Fourth, Eighth, and Fourteenth Amendments to the United States

Constitution, New York common law, and the New York State Constitution: (1) RPD officers subjected him to excessive force, assault, and battery; (2) RPD officers failed to intervene to stop same; (3) RPD officers intentionally inflicted emotional distress upon him; (4) RPD officers negligently inflicted emotional distress upon him; (5) Huiatt and RGH acted with deliberate indifference in failing to attend to Plaintiff's serious medical condition; (6) Huiatt was negligent/committed malpractice in failing to provide Plaintiff medical care; (7) RGH was negligent in failing to provide Plaintiff medical care; (8) RPD officers subjected Plaintiff to unlawful confinement and/or false arrest; (9) RPD officers acted in furtherance of a conspiracy to Plaintiff harm; (10) Huiatt and the RPD acted in furtherance of a conspiracy to deny Plaintiff medical care; (11) Fratangelo, Caruso, Smith, and the RPD were negligent in their training, retention, and supervision of RPD officers; and (12) the City of Rochester was negligent, under a theory of municipal liability, in the hiring, training, retention, and supervision of RPD Officers. ECF No. 20 (Fourth Amended Complaint).

In a screening order dated September 19, 2024, *see* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, the Court granted Plaintiff leave to proceed *in forma pauperis*, granted Plaintiff leave to file a third amended complaint to replead several claims asserted in his Second Amended Complaint, (3) dismissed several claims with prejudice, (4) directed Plaintiff to show cause why § 1983 claims related to Plaintiff's criminal prosecution, including false arrest, malicious prosecution, fabrication of evidence, and denial of right to fair trial should not be dismissed under the favorable termination rule of *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), and (5) directed that several claims could proceed to service.[1] *See* ECF No. 12 ("the initial screening order"). The following analysis concerns Plaintiff's fourth amended complaint filed March 22, 2024, which is now the operative

[1] Service of these claims was deferred until the filing and screening of a third amended complaint.

pleading.[2] *See Harris v. City of New York*, 186 F.3d 243, 249 (2d Cir. 1999) (legally effective amended complaint becomes the operative pleading).

**DISCUSSION:**

Plaintiff has been granted permission to proceed *in forma pauperis*, and therefore, pursuant to 28 U.S.C. §§ 1915 (e)(2)(B) and 1915(A), this Court must screen the Fourth Amended Complaint. Plaintiff brings federal constitutional claims pursuant to 42 U.S.C. § 1983, state tort claims pursuant to New York State law, and claims based on alleged violations of the New York State Constitution.

Section 1915 obligates the Court to identify cognizable claims or dismiss portions of or all of the complaint if the claims contained therein are "frivolous, malicious, or fail to state a claim upon which relief may be granted" and those claims within which plaintiff seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915A (a)-(b). The Court accepts all facts within the complaint as true and draws all inferences in favor of the plaintiff. *See Shakur v. Selsky*, 391 F.3d 106, 112-113 (2d Cir. 2004), *citing Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam). As plaintiff proceeds *pro se*, the Court is "obliged to construe his pleadings liberally, particularly where they allege civil rights violations." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

Plaintiff must, however, meet the notice requirements of Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief" and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 [2007] (quoting *Bell Atl. Corp. v. Twombly*, 550

---

[2] After the filing of his Third Amended Complaint, ECF No. 15, Plaintiff sought and was granted leave to file a fourth amended complaint. ECF No. 18.

U.S. 544, 555 (2007); *see Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004). Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir. 2007) (quoting *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 796 (2d Cir. 1999)).

## I. The Fourth Amended Complaint

Plaintiff alleges that, on November 17, 2021, he was pursued on foot by RPD Officer Blind while on his property at 15 Malvern Street in the City of Rochester. ECF No. 20, at 4. Blind commanded that Plaintiff "stop," and Plaintiff ran from Blind's pursuit. *Id.* During the pursuit, Plaintiff ingested "numerous pain pills." *Id.* at 6. While running, Plaintiff slipped and fell, and Blind "struck [Plaintiff] in the face and head, several times, with closed fist blows" and then "placed [Plaintiff] in a choke hold until [Plaintiff lost] consciousness." *Id.* at 5. RPD Officer Hess arrived at the scene followed by Pedicone, Goolsby, Hollenbeck, Caruso, and Fratangelo. As Plaintiff regained consciousness, Hess "twisted Plaintiff's right arm and wrist, causing him pain and discomfort as Blind, with his knee in Plaintiff's back, tightly [placed] handcuffs on his wrists causing him further pain and discomfort." *Id.*

Plaintiff "inquired about the reason as to why he had been targeted and chased," and Plaintiff was advised that his arrest "had something to do with a robbery." *Id.* He was further informed that he was being "arrested for a gun" and was ordered to get into the back of the squad car, which Plaintiff refused to do. *Id.* at 6. Plaintiff informed the officers that he had ingested pain pills and "was beginning to not feel well because of all the pills he had ingested." *Id.* at 6.

Upon his refusal to get into the car, Hollenbeck "began to strike Plaintiff multiple times in the abdomen and rib cage with closed fist blows and elbows causing him to defecate." *Id.* at 6.

Hollenbeck stopped only when Goolsby reminded Hollenbeck that the body-worn cameras were on. *Id.* at 6.

Thereafter, "Goolsby then grabbed Plaintiff's right leg as Hollenbeck grabbed the left one and both of them proceeded to lift Plaintiff causing him to impact the back of his head on the roof and/or door frame of the police car causing Plaintiff instant head pain and dizziness." *Id.* Blind then "began to slam the rear driver-side door repeatedly against Plaintiff's head [and right arm] with extreme force." *Id.* at 6-7.

Pedicone then reached into the car and began to "strike Plaintiff on the left side of the face and head" and "used his military grade mace upon Plaintiff, spraying said chemical into Plaintiff's face, eyes, nostrils, ear cavities, and mouth." *Id.* at 7. Pedicone then "grabbed Plaintiff's face from behind and gouged his eyes" and "struck him again with closed fists in the face and head multiple times." *Id.*

Goolsby then "reached into the rear passenger-side door of the car, grabbed Plaintiff's right foot with both hands, and with force, twisted it nearly to its breaking point." *Id.* Goolsby further "pulled off Plaintiff's right sock exposing his toes, grabbed them with both hands, and with multiple . . . toes in each hand. Goolsby then bent them in opposite directions, nearly to their breaking point." *Id.* Hollenbeck then "grabbed Plaintiff's left leg . . . with extreme force, causing his shoulder to nearly dislocate resulting in severe pain." *Id.*

Plaintiff told the officers that he could not breathe due to the mace in the air and defecated again. *Id.* at 8. "Either Caruso or Fratangelo" approached the window of the squad car, and Plaintiff stated, "I can't breathe, bro," but he was again ignored. *Id.* Plaintiff asserts that he heard the police dispatch "broadcast to RPD officers that two robbery suspects who were being sought after had been tracked to a location using the GPS of cell phones that had been taken during the

commission of the crime." *Id.* "Upon hearing the broadcast, the RPD . . . devised an overt plan to overcome the violation of Plaintiff's constitutional rights; possible reprimand; and/or lawsuits against RPD defendants by falsely reporting that Plaintiff was seen walking with an individual and that he and Plaintiff matched the description of these robbery suspects despite Plaintiff not matching any description." *Id.* at 9.

Plaintiff was subsequently taken to RGH and seen by Huiatt. *Id.* Plaintiff informed Huiatt that he had been injured and that he had "ingested a lot of pills including molly." *Id.* at 9. Blind entered Plaintiff's room, and "attempted to coerce Plaintiff into providing a false confession." *Id.* at 10. Blind then approached Huiatt and informed her that force was used upon Plaintiff and "he could possibly lose his job as a result because of a prior situation, then requested that she not document any of Plaintiff's injuries because he would be preparing his report and needed Plaintiff to be cleared medically so that it can be noted in his report, to which Dr. Huiatt agreed to Blind's request." *Id.* Shortly after, Plaintiff "began to succumb to the effects of all the pills," and Huiatt shined a light in his eyes and indicated to a nurse that Plaintiff may be overdosing. *Id.* at 10. Huiatt and Blind conspired to deny Plaintiff any treatment, and Plaintiff was given back his soiled clothes, discharged, and transported to the Monroe County Jail ("MCJ") without any medical treatment. *Id.* at 11.

Plaintiff was placed under observation or "suicide watch because of his emotional distress, mental exhaustion, and ingestion of an unknown amount of pills." *Id.* The day after Plaintiff arrived at the MCJ, he began experiencing bleeding while urinating and in bowel movements lasting weeks. *Id.* at 12. Plaintiff alleged that he experienced "frequent migraines, frequent fainting, swollen hands and wrists with loss of feeling . . . swollen right foot and ankle, neck, back, hip, arm, and shoulder pain." *Id.* at 12.

**II. Section 1983 Claims**

"To state a valid claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law and (2) deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). Section 1983 "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against a state actor under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Mere "linkage in the . . . chain of command" is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985). A claim of "supervisor liability in a § 1983 action depends on a showing of some personal responsibility and cannot rest on *respondeat superior*." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).

**A. City of Rochester and RPD Chief Smith**

Plaintiff sues and brings claims against it under § 1983, New York State Constitution, Articles 1, 5, 11 and 12, and New York common law (negligence). ECF No. 20 at 27-28. A local government may not be held liable under § 1983 unless the challenged action was performed pursuant to a municipal policy or custom. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Municipalities are not subject to § 1983 liability solely on the doctrine of *respondeat superior*. *Collins v. City of Harker Heights*, 503 U.S. 115, 121 (1992); *Monell*, 436 U.S. at 694. Rather, to hold a municipality liable in a § 1983 action, a plaintiff is required to plead and prove three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (citations and quotations omitted); *see Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) ("In order to establish the liability of a municipality in an action under § 1983 for unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy"). "While an isolated act of excessive force by a single, non-policymaking municipal employee, standing alone, is insufficient evidence, a policy or custom may be inferred from acts or omissions of a municipality's supervisory officials serious enough to amount to gross negligence or deliberate indifference to the constitutional rights of the plaintiff." *Villante v. Dep't. of Corr.*, 786 F.2d 516, 519 (2d Cir.1986) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 828-33 (1985) (Brennan, J., concurring in part and concurring in the judgment) (other citations omitted). However, liability may be justified if acts of excessive force were "done pursuant to municipal policy or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses." *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012); *see Amnesty America v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004).

Plaintiff contends that the City of Rochester, RPD, and Smith, as Chief of Police, were "on actual or constructive notice of the propensity of Blind to abuse and/or misuse his power and

authority." ECF 20 at 29. Further, he alleges that the City of Rochester had an official policy of failing to train and investigate officers for abuses of power, including "four-level standard for intrusive conduct during encounters with citizens." *Id.* at 31. Moreover, he alleges that the City of Rochester "failed to investigate prior incidents involving Blind" and the other officers. *Id.* Plaintiff cites a list of prior filed claims involving excessive force by Blind. At this stage of the litigation and mindful to the Second Circuit's directives to construe pro se pleadings liberally, the § 1983 claims against the City of Rochester based on the use of excessive force may proceed to service.[3] However, the state common-law claims are dismissed without prejudice for the reasons explained below.

This same section 1983 claim is brought against Smith as RPD Chief in his official and individual capacity. Where both a municipal entity and a municipal official in his or her official capacity are named as defendants, the official capacity claims against the official are redundant and are properly dismissed. *See Anemone v. Metro. Transp. Auth.*, 410 F. Supp. 2d 255, 264 n. 2 (S.D.N.Y. 2006); *see also Johnson v Town of Greece*, No. 23-CV-6137, at *1 (W.D.N.Y. Jan. 17, 2024) (dismissing claims against defendants in their official capacity where Town was also sued).

Regarding the individual capacity claim, Plaintiff has failed to plead any facts to demonstrate that Smith was personally involved in the RPD's alleged constitutional violations, and therefore, the section 1983 claim against Smith in his individual capacity is dismissed with prejudice.

**B. Excessive Force**

The Court previously found that the use of excessive force claim under section 1983 could proceed to service against Blind, Goolsby, Hollenbeck, and Pedicone. ECF No. 12 at 10-11. In the Fourth Amended Complaint, Plaintiff has also alleged that Hess participated in the utilization

---

[3] The Court takes no opinion as to whether these claims could survive a properly filed motion to dismiss under Rule 12(b)(6).

of excessive force during the handcuffing process by "twist[ing][Plaintiff's] arm and wrist . . . causing him pain and discomfort." ECF No. 20 at 5. An individual does not need to sustain a severe injury to maintain an excessive force claim. *See Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987); *see also Cugini v. City of New York*, 941 F.3d 604, 613 (2d Cir. 2019). Accordingly, the excessive force claim as to Hess as well as against Blind, Goolsby, Hollenbeck, and Pedicone may proceed to service.

**C. Failure to Intervene**

The Court previously found that this claim could proceed to service against Caruso and Fratangelo but dismissed it with leave to amend against Hess and Smith because the Plaintiff did not allege Hess's and Smith's personal involvement. ECF No. 12 at 11, 25. The Fourth Amended Complaint asserts this claim against Caruso, Fratangelo, and Hess as in the previous complaint, but Plaintiff now also asserts this claim against Blind, Hess, Goolsby, Hollenbeck, and Pedicone. ECF No. 20 at 15. The Fourth Amended Complaint no longer asserts this claim against Smith. *Id.*

It is well-settled that law enforcement officers have "an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where the officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested' or (3) that any constitutional violation has been committed by a law enforcement official." *Branen,* 17 F.3d at 557 (internal citations omitted). "Whether the officer had a "realistic opportunity to intervene is normally a question for the jury, unless 'considering all the evidence, a reasonable jury could not possibly

conclude otherwise.'" *Sloley v. VanBramer*, 945 F.3d 30, 47 (2d Cir. 2019) (citations and internal quotation marks omitted).

Plaintiff's allegations, taken as true, give rise to a plausible inference that each named officer failed to intervene to protect Plaintiff from the excessive force alleged during his arrest. It is alleged that Hess was present while Blind struck Plaintiff and choked him into unconsciousness. ECF No. 20 at 15. It is further alleged that each officer was present while Hollenbeck punched Plaintiff in the "abdomen and rib cage with closed fist blows and elbows." ECF No. 20 at 6. Shortly after, Blind, Goolsby, and Hollenbeck put Plaintiff into the police car, at which point Blind slammed the rear driver-side door "repeatedly against Plaintiff's head with extreme force" and slammed the same door "repeatedly . . . against Plaintiff's right arm." *Id.* at 6-7. Pedicone then beat Plaintiff with a closed fist in the face and head, "gouged" his eyes, and utilized mace against him. *Id.* at 7-8. Caruso and Fratangelo were present, and did not assist Plaintiff when he stated, "I can't breathe, bro." *Id.* at 8. Plaintiff alleges that Goolsby warned Hollenbeck that the body-worn cameras were on while the beatings occurred, giving rise to an inference that they were aware that excessive force was being utilized. *Id.* at 6. Accordingly, the failure to intervene claims may proceed against Blind, Goolsby, Hollenbeck, Pedicone, Caruso, Hess, and Fratangelo as they are accused of being present during the alleged use of excessive force and either explicitly condoned the other officers' conduct or failed to intercede despite having a reasonable opportunity to do so.

**D. Conspiracy**

Plaintiff now asserts this claim against Blind, Goolsby, Hollenbeck, Hess, Pedicone, Caruso, Huiatt and Fratangelo under 42 U.S.C. §§ 1983 and 1985, and under New York law. The prior screening order dismissed Plaintiff's prior conspiracy claims with leave to amend. ECF No. 12 at 11-12.

"To prove a section 1983 conspiracy claim, a plaintiff must show "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Warr v. Liberatore*, 270 F. Supp. 3d 637, 650 (W.D.N.Y. 2017) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Section 1985 "applies specifically to conspiracies," and requires "some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (*quoting Romer v Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000). Claims brought pursuant to § 1985(3) further require facts suggesting that the conspiracy was "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Dolan v Connolly*, 794 F.3d 290, 296 (2d Cir. 2015); *Cine SK8, Inc. v. Town of Henrietta,* 507 F.3d 778, 791 (2d Cir.2007).

**1. RPD Officers**

Plaintiff first asserts that the RPD officers conspired to conceal their use of excessive force between one another by warning each other about the on-status of their body-worn cameras while Plaintiff was being assaulted and otherwise caused Plaintiff harm. *See* ECF No. 20 at 6. The Court concludes that Plaintiff's conspiracy claims against the RPD officers are barred by the intracorporate conspiracy doctrine as the RPD officers are all employees of the RPD. "[O]fficers, agents, and employees of a single corporate entity are legally incapable of conspiring together" except "where the individual defendants, despite being a part of the same entity, are pursuing personal interests wholly separate and apart from the entity." *Ivery v Baldauf*, 284 F. Supp. 3d 426, 440 (W.D.N.Y. 2018); *see Colon v City of Rochester*, 419 F. Supp. 3d 586, 595 (W.D.N.Y. 2019) (dismissing conspiracy claims against fellow officers as barred by intracorporate conspiracy

doctrine). Plaintiff has pled no facts to support a conclusion that the exception applies. Plaintiff's interactions with the RPD officers were solely in their capacity as officers. There is no suggestion that a personal connection between these officers and Plaintiff existed during the relevant period. Accordingly, the conspiracy claims alleged against the RPD officers are dismissed with prejudice.

**2. State Action Against Huiatt**

Plaintiff's section 1983 conspiracy claim between Blind and Huiatt, may proceed to service.[4] However, Plaintiff has failed to allege that this conspiracy was motivated by a discriminatory animus, and the section 1985(3) claim must be dismissed.

"It is axiomatic that the First and Fourteenth Amendments, and § 1983, apply only to state actors. At the same time, though, a private individual may be considered a state actor for purposes of a constitutional challenge if his/her conduct is 'fairly attributable to the state.'" *Leeds v. Meltz*, 85 F.3d 51, 54 (2d Cir. 1996) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). Relevantly, under the "compulsion test", "[s]tate action may properly be found where the state exercises "coercive power" over, is "entwined in [the] management or control" of, or provides "significant encouragement, either overt or covert" to, a private actor, or where the private actor "operates as a willful participant in joint activity with the State or its agents," is "controlled by an agency of the State," has been delegated a "public function" by the state, or is "entwined with governmental policies." *Tancredi v. Metropolitan Life Ins. Co.*, 316 F.3d 308, 313 (2d Cir. 2003) (citing *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 296 (2001)). The fundamental question is whether the challenged activity was "compelled or even influenced" by state regulation. *Lynch v. Southampton Animal Shelter Foundation, Inc.*, 971 F.Supp.2d 340, 350 (E.D.N.Y. 2013); *O'Brien v. Carrier Coach, Inc.*, No. 03-CV-0875, at *4

---

[4] *But see* note 3, *supra.*

(W.D.N.Y. Mar. 13, 2006). Given Plaintiff's allegations that "Blind and Dr. Huiatt agreed and/or combined to engage in a scheme . . . to violate the rights of Plaintiff when Blind took Dr. Huiatt off to the side and informed and/or asked her to disregard Plaintiff's assault allegations and/or com[plaints of pain, and to not document his injuries," ECF No. 20 at 26, it could be argued that Huiatt's actions were compelled by a state actor, and thus Huiatt may be considered a state actor under § 1983.

Plaintiff alleges that Huiatt and Blind conspired to deny him medical care and to conceal Blind's use of excessive force upon Plaintiff so that Blind would not face repercussions. Plaintiff has alleged that there was a meeting of the minds between Blind and Huiatt, as Blind told Huiatt to "clear" Plaintiff so that Blind would not have to report that Plaintiff had sustained injuries because to do so would put his career in jeopardy. ECF No. 20 at 10, 26. Plaintiff alleges that Huiatt acquiesced to this request, and Plaintiff was discharged without any medical treatment. *Id.* Plaintiff alleges that, as a result of receiving no medical treatment, he sustained injuries including, but not limited to, neck pain, back pain, shoulder pain, fainting, migraines, abdominal pain, memory loss, anxiety, blurred vision, and muffled hearing. *Id.* at 33. Plaintiff's claims for conspiracy under section 1983 may proceed to service against Blind and Huiatt.

**E. Failure to Provide Medical Care**

Plaintiff asserts this claim against Huiatt and RGH. Because Plaintiff was an arrestee at the time of these events, his allegations of constitutionally insufficient medical care are analyzed under the Fourteenth Amendment. *See Shakir v Stankye*, 805 Fed. App'x 35, 39-40 (2d Cir 2020) (summary order) (stating that "pre-arraignment conditions of confinement claims . . . aris[e] under the Fourteenth Amendment").

**1. Huiatt**

A private actor will be found to have acted jointly with a state actor if he and the state actor "somehow reached an understanding" to violate the plaintiff's civil rights. *Fisk v. Letterman*, 401 F. Supp. 2d. 362, 376 (S.D.N.Y. 2005). Therefore, as discussed above, because the conspiracy claims against Huiatt may proceed, at this stage, Huiatt may be considered a state actor through those acts. *See Temple v. Albert*, 719 F. Supp. 265, 267 (S.D.N.Y. 1989).

To state a constitutional claim of inadequate medical care, a prisoner must allege that a defendant was deliberately indifferent to his serious medical needs. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Such claims have both an objective and a subjective prong.

Under the objective prong, the plaintiff must demonstrate that the alleged medical deprivation was "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006), *abrogated on other grounds by Kravitz v. Purcell*, 87 F.4th 111 (2d Cir. 2023). "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency." *Darnell*, 849 F.3d at 30. Factors that have been considered include the existence of an injury that "a reasonable doctor or patient would find important and worthy of comment or treatment;" the presence of a medical condition that "significantly affects an individual's daily activities;" or the existence of "chronic and substantial pain." *Charles v. Orange Cnty.*, 925 F.3d 73, 85-86 (2d Cir. 2019); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Where denial of medical care is at issue, "[t]he medical need is considered 'serious' where the denial of treatment 'could result in further significant injury or the unnecessary or wanton infliction of pain.'" *Abreu v. Lipka*, 778 F. App'x 28, 31-32 (2d Cir. 2019) (summary order) (citing *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000). Further, the "absence of adverse medical effects or demonstrable physical injury" is one

factor for consideration, and "the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of harm." *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003).

Under the subjective prong, or the "*mens rea*" prong, Plaintiff must demonstrate that the defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed . . . even though the defendant knew or should have known that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. This intentional or reckless conduct standard requires more than mere negligence. *Id.* at 36.

Regarding the objective prong, Plaintiff alleges that he sustained physical injuries including head trauma, swelling, and pain, which "will require future . . . medical care for the remainder of his life." ECF No. 20 at 20. He also suggests that he overdosed on the pills he ingested. *Id.* at 11. Plaintiff asserts that the day after being discharged from the hospital, he experienced bleeding while urinating and having bowel movements suggesting internal bleeding. *Id.* at 12. These effects lasted for weeks and create a sufficient inference that Plaintiff had a serious medical condition with lasting effects. *See Carpenter*, 316 F.3d at 189.

Plaintiff has also alleged sufficient facts under the subjective prong given that he informed Huiatt of the severity of the beating, Huiatt was asked not to treat Plaintiff, and subsequently failed to treat Plaintiff. Accordingly, this claim may proceed to service against Huiatt.

**2. RGH**

Plaintiff also claims that RGH acted with deliberate indifference in failing to provide him medical care by permitting Huiatt to deny him same. ECF No. 20 at 21. This claim must be dismissed against RGH because Plaintiff has pled no facts indicating that RGH is a state actor.

"As a general rule, private hospitals do not act under the color of law for § 1983 purposes." *McCray v. New York*, 15-CV-409 at *3 (W.D.N.Y. Oct. 24, 2023) (quoting *Sykes v. McPhillips*, 412 F. Supp. 2d 197, 200 (N.D.N.Y. 2006) (internal quotations marks omitted). There are three exceptions to this rule: (1) when there is a nexus or joint action between the state and the hospital; (2) when the hospital acts under state compulsion; or (3) when the hospital's provision of services constitutes a public function. *See Sykes*, 412 F. Supp. 2d at 201.

Plaintiff has not alleged any involvement by RGH in his treatment pursuant to § 1983 other than conclusory allegations that "severe and serious conscious pain and suffering and severe mental anguish suffered by Plaintiff were occasioned solely by . . . Dr. Huiatt and RGH," ECF No. 20 at 20, and that "Dr. Huiatt's and RGH's acts, conduct, and omissions deprived Plaintiff of the rights secured by the Fourth, Eighth, and Fourteenth Amendments." *Id.*; *see White v. Monarch Pharmaceuticals, Inc.*, 346 F. App'x 739, 741 (2d Cir. 2009) (summary order) (vague and conclusory claims of a nexus between private actor and state fail to demonstrate that the actions of defendants should be treated as state action). Nor has Plaintiff pled any facts from which to infer that RGH falls under any of the above exceptions.

Moreover, even if RGH was properly considered a state actor, this claim is dismissed, as entities sued under section 1983 may not be held liable under a theory of *respondeat superior*. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Plaintiff has not pled any facts that RGH acted in any fashion other than employing Huiatt. *See Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983) (proof that a hospital employed a tortfeasor will not, standing alone, establish liability). Therefore, any section 1983 claims against RGH are dismissed.

**F. False Arrest/Unlawful Confinement**

Because Plaintiff's false imprisonment claim calls into question the validity of his criminal conviction, Plaintiff must first demonstrate that his conviction has been reversed or invalidated in some way.

In *Heck v. Humphrey*, 512 U.S. 477, 486-487 (1994), the Supreme Court held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

512 U.S. at 486-487.

To the extent Plaintiff argues that he was falsely arrested or unlawfully confined, those claims are barred by *Heck*. Disposition of a case on *Heck* grounds "warrants only dismissal without prejudice, because the suit may be reinstituted should plaintiff's conviction be expunged by executive order, declared invalid or called into question by a federal court's issuance of a writ of habeas corpus." *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999).

**III. State Law Claims**

Plaintiff brings state common law claims against members of the RPD and against RGH and Huiatt. Against officers of the RPD, Plaintiff alleges false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, assault, battery, vicarious liability (negligence), and failure to intervene. Against Huiatt and RGH, Plaintiff alleges supervisory liability, negligence, conspiracy, fraudulent concealment, and medical malpractice. It is noted that Plaintiff previously alleged intentional infliction of emotional distress against Huiatt, which the

initial screening order dismissed with leave to amend but he has forgone this claim in the Fourth Amended Complaint.

**A. RPD Officers**

The initial screening order advised Plaintiff that, in order to bring state tort claims against a municipality or its employees, he must file a Notice of Claim in accordance with New York General Municipal Law § 50-e within 90 days after the claim accrued. ECF No. 12 at 20. Plaintiff had not included any reference to a Notice of Claim in his prior complaints. Here, Plaintiff has attached his Notice of Claim, notarized February 17, 2022, which he acknowledges was filed two days after the 90-day deadline due to mistaken forms, illness, and the absence of a regularly scheduled notary at MCJ. ECF No. 20 at 12-13, 46-47. It is undisputed that all of the acts giving rise to Plaintiff's claims occurred on November 17, 2021. ECF No. 20 at 4.[5] Thus, the Notice of Claim was required to be filed by February 15, 2022.

Notice of claim requirements are "construed strictly," and failure to comply with the Notice of Claim requirements "ordinarily requires dismissal for failure to state a cause of action." *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1999) (internal quotation marks omitted). Further, the federal district courts lack jurisdiction to entertain an application for leave to file a timely Notice of Claim or to determine whether the Notice of Claim is timely. *See Brown v. Metropolitan Transp. Auth.*, 717 F. Supp. 257, 260 (S.D.N.Y. 1989). Plaintiff may apply for leave to file a late Notice of Claim in the Supreme or County Court "where the action may

[5] Claims for assault and battery accrue immediately upon the occurrence of the tortious act. *See Espada v. Schneider*, 522 F. Supp. 2d 544, 550 (S.D.N.Y. 2007). Claims for false imprisonment accrue upon release from confinement. *See Rateau v. City of New York*, No. 06-CV-4751, at * 14 (E.D.N.Y. Sept. 29, 2009). Intentional infliction of emotional distress is a continuing tort, and the statute of limitations for such claims is tolled until the "last questionable act." *Breton v. City of New York*, 404 F. Supp. 3d 709, 809 (S.D.N.Y. 2019). Plaintiff's claims all appear to have occurred on one day; November 17, 2021, and the 90 days began to run then.

properly be brought for trial . . . where the action is pending, or . . . in any adjoining county." N.Y. Gen. Mun. Law § 50-e (7).

There is a narrow exception to the Notice of Claim requirement, the "public interest exception," where a private civil rights claim is brought in the public interest. *See Curto v. Bender*, No. 04-CV-26, at * 7 (W.D.N.Y. Mar. 28, 2005). "[T]he public interest exception does not apply when plaintiffs are seeking money damages for the sole purpose of redressing plaintiffs' individual injuries." *Atkins v. County of Orange,* 251 F.Supp.2d 1225, 1235 (S.D.N.Y.2003). Plaintiff does not allege that his lawsuit is for any purpose other than to vindicate his own private interests, and therefore, this Court declines to find that the public interest exception applies. *See Maier v. New York City Police Dept.*, 2009 WL 2915211, at * 3 n.3 (E.D.N.Y. Sept. 1, 2009) (noting that the plaintiff's claims of police brutality and the right to speak out against same were not matters of public concern where the plaintiff sought to vindicate her own rights and support her own freedom of speech claim).

The initial screening order permitted Plaintiff's state law assault, battery, failure to intervene, and intentional infliction of emotional distress claims to proceed but noted that Plaintiff must provide proof that he filed a timely Notice of Claim. Plaintiff has failed to do so, and this Court has no jurisdiction to extend the time to file a notice of claim. Therefore, Plaintiff's state law assault, battery, failure to intervene, conspiracy, intentional and negligent infliction of emotional distress, vicarious liability (negligence), and false imprisonment claims against members of the RPD and Smith are dismissed without prejudice for failure to comply with N.Y. Gen. Mun. Law § 50-e.

**B. Huiatt and RGH**

Plaintiff asserts that Huiatt and RGH were negligent in failing to provide him medical care and that Huiatt is liable for medical malpractice. ECF No. 20 at 21-24. Plaintiff also asserts a conspiracy claim against Huiatt under New York law, *id.* at 25, a "fraudulent concealment" claim against Huiatt, and a supervisory liability claim (negligence) against RGH. *Id.* at 24. The Court must analyze whether it may exercise supplemental jurisdiction over these remaining state law claims. See 28 U.S.C. 1367(a) and (c)

A district court has discretion to hear state law claims where the relationship between a plaintiff's federal and state claims present "but one constitutional 'case'" and "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). If "plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding," the court will generally exercise supplemental jurisdiction if "judicial economy [and] convenience and fairness to litigants" weigh in favor of hearing the state claims at the same time. *Id.* at 725-26; *see also* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .").

Because Plaintiff's negligence claim against RGH derives from the same operative facts as the deliberate indifference claim against Huiatt—this court may exercise supplemental jurisdiction over it and over the other state law claims against Huiatt.

**1. Negligence/Medical Malpractice (Huiatt)**

"It is well-settled that to establish a claim of negligence, a plaintiff must prove: a duty owed to the plaintiff by the defendant, a breach of that duty, and injury proximately resulting therefrom."

*Moore Charitable Found. v. PJT Partners, Inc.*, 217 N.E.3d 8, 14 (N.Y. 2023) (collecting cases). Under New York common law "[n]egligence as a legal concept traditionally includes both proximate cause and foreseeability as tests of liability." *Pagan v. Goldberger*, 51 A.D.2d 508, 509 (N.Y. App. Div. 1976). Generally, "medical doctors owe a duty of care to their patients." *Rivera v. New York City Health & Hosp. Corp.*, 191 F. Supp. 2d 412, 418 (S.D.N.Y. 2002). Plaintiff's complaint plausibly asserts that Huiatt breached that duty by denying him medical care, and that his resulting injuries were reasonably foreseeable given that Plaintiff informed Huiatt what had happened to him. Therefore, Plaintiff's negligence claim against Huiatt may proceed to service.

Plaintiff does not so much plead medical malpractice and "fraudulent concealment" as merely name them; however, they are analyzed here. "In order to make out a prima facie case for medical malpractice, plaintiff must allege that (1) the physician owed a duty of care to the plaintiff; (2) the physician breached that duty by deviating from accepted medical practice; and (3) the alleged deviation proximately caused plaintiff's injuries." *Naughright v. Weiss*, 857 F. Supp. 2d 462, 474 (S.D.N.Y. 2012). Liberally construed, Plaintiff's allegations that Huiatt failed to monitor his condition and administer treatment or medication support a plausible deviation from the standard of care causing him harm. Therefore, this claim may proceed to service against Huiatt.

The elements of a fraudulent concealment claim under New York law are: (1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and (6) damages. *De Sole v. Knoedler Gallery, LLC,* 974 F. Supp. 2d 274, 314 (S.D.N.Y. 2013) (citing *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993) (internal citations and quotation marks omitted). Here, Plaintiff's allegations are wholly conclusory which, without more, fail to state a claim upon which relief may be granted. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987).

**2. Conspiracy (Huiatt)**

In addition to a conspiracy claim under 1983, plaintiff asserts a state conspiracy claim against Huiatt. ECF No. 20 at 25. New York law does not recognize civil conspiracy to commit a tort as a separate cause of action. *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006). A civil conspiracy claim under New York law hinges on a successful underlying tort claim. However, the torts successfully pled against Huiatt under New York law are negligence and medical malpractice. Under New York law, there can be no conspiracy to commit a negligent act, and therefore, Plaintiff's state conspiracy claim against Huiatt is dismissed with prejudice. *See In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 175 F. Supp. 2d 593, 633 (S.D.N.Y. 2001) (citing *Cresser v. American Tobacco Co.*, 174 Misc.2d 1, 6 (Sup. Ct. Kings Cnty. 1997).

**3. Supervisory Liability (RGH)**

Plaintiff alleges that RGH is vicariously liable for Huiatt's medical malpractice and negligence. Liberally construed, Plaintiff's complaint pleads a claim for negligent hiring, supervision, training, and retention. ECF No. 20 at 21-24. To state a cause of action for negligent supervision, hiring, or training "in addition to the standard elements of negligence, a plaintiff must show 1) that the tortfeasor and the defendant were in an employee-employer relationship; 2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and 3) that the tort was committed on the employer's premises." *Ehrens v. Lutheran Church,* 385 F.3d 232, 235 (2d Cir.2004) (citations and quotations omitted). Plaintiff has successfully alleged same in the Fourth Amended Complaint, and thus this claim may proceed to service.

## IV. State Constitutional Claims

Under Plaintiff's "List of Injuries," Plaintiff, without any factual support, asserts violations of Article 1, §§ 5, 11, and 12 of the New York State Constitution. ECF No. 20 at 22-24. These provisions detail the State's prohibitions against cruel and unusual punishment, the State's equal protection clause, and the State's prohibitions against excessive force respectively. In the initial screening order, the Court dismissed the state constitutional claims with leave to amend. ECF No. 12 at 23-24.

It is well settled that "no private right of action exists for violations of the New York State Constitution where the plaintiff has an alternative remedy under § 1983 for violations of parallel provisions of the U.S. Constitution." *Forrest v. Cnty of Greene*, 676 F. Supp. 3d 69, 79 (N.D.N.Y. 2023) (internal quotation marks and citations omitted). Because Plaintiff's claims may be addressed through his claims under section 1983, Plaintiff's constitutional claims are dismissed.

## V. Medical Records

Plaintiff has filed three letters indicating that he has obtained a copy of his medical records from November 17, 2021 (*see* ECF 21, ECF 22, and ECF 23) requesting guidance as to how to proceed with same. Plaintiff may file his medical records as exhibits to his Fourth Amended Complaint.

Plaintiff should keep in mind that certain personal information is protected by Federal Rule of Civil Procedure 5.2. If Plaintiff files his medical records and does not redact the information protected by Rule 5.2, any protection afforded to his own information by Rule 5.2 will be deemed waived. Fed. R. Civ. P. 5.2(h).

## CONCLUSION

For the reasons set forth above, Plaintiff's state law claims against the City of Rochester, Smith, and RPD officers and his state constitutional claims will be dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1950A(b) without prejudice. Plaintiff's state law civil conspiracy and fraudulent concealment claims against Huiatt are also dismissed with prejudice under §§ 1915(e)(2)(B)(ii) and 1915(b)(1). Moreover, the section 1983 claims against Smith are also dismissed because they fail top state claims upon which relief can be granted against him.

Further, Plaintiff is granted leave to file his medical records as exhibits to his pleadings as directed above.

## ORDER

In light of the above,

ORDERED that the section 1983 claims against Defendant Smith are dismissed with prejudice under 28 U.S.C. 1915(e)(2)(B) and 1915A(b); the state common law claims against Smith are dismissed without prejudice; and the Clerk of Court is directed to terminate Smith from this action; and it is further

ORDERED that Plaintiff's state law claims against the City of Rochester and RPD officers Blind, Goolsby, Hess, Hollenbeck, Pedicone, Caruso, and Fratangelo are dismissed without prejudice; and it is further

ORDERED that Plaintiff is granted leave to file exhibits to his pleadings as directed above within 45 days of the date of this Order; and it is further

ORDERED that the Clerk of Court is directed to cause the United States Marshals Service to serve copies of the Summons, Fourth Amended Complaint, and this Order upon Defendants

Blind, Hollenbeck, Hess, Pedicone, Goolsby, Caruso, Fratangelo, Huiatt, Rochester General Hospital, and the City of Rochester without Plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by money award in Plaintiff's favor; and it is further

ORDERED, that pursuant to 42 U.S.C. § 1997e (g), Defendants Blind, Hollenbeck, Hess, Goolsby, Pedicone, Caruso, Fratangelo, Huiatt, Rochester General Hospital, and the City of Rochester are directed to answer the Fourth Amended Complaint upon service;

FURTHER that the Clerk of Court is directed to forward a copy of this Order and the Complaint to Corporation Counsel, City of Rochester, Department of Law, 30 Church Street, #400A, Rochester, NY 14614.

IT IS SO ORDERED.

Dated: January 29, 2025
Rochester, New York

HON. FRANK P. GERACI, JR.
UNITED STATES DISTRICT JUDGE
WESTERN DISTRICT OF NEW YORK